UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BENNY C. ELLERBEE,

       Plaintiff,                     Case No. 2:19-cv-5675
                                        JUDGE EDMUND A. SARGUS, JR.
    v.                                   Magistrate Judge Chelsey M. Vascura

CHIPOTLE SERVICES, LLC,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Benny C. Ellerbee's Amended Motion for Summary Judgment (ECF No. 42, hereinafter "Pl.'s Mot."), Plaintiff's Motion for Summary Judgment (ECF No. 38), and Defendant Chipotle Services, LLC's Motion for Summary Judgment and Brief (ECF Nos. 39, 40, hereinafter "Def.'s Mot."). Defendant and Plaintiff each filed responses (ECF Nos. 43, 44) and replies (ECF Nos. 45, 46). For the following reasons, the Court **GRANTS** Defendant's motion, and **DENIES AS MOOT** Plaintiff's motions.

### I. BACKGROUND

This case arises out of Defendant Chipotle's termination of Plaintiff Benny Ellerbee in August 2019. Mr. Ellerbee, a Black male, alleges that he was terminated because of his race; Chipotle, conversely, alleges that Ellerbee was terminated for inappropriately touching a minor coworker.

Chipotle is a national chain of Mexican restaurants. Each Chipotle location has one General Manager and several Service Managers and Kitchen Managers. The General Manager reports to a Field Leader who oversees five to ten Chipotle restaurants.

Mr. Ellerbee began working as a cashier and take-out specialist at Chipotle's St. Clairsville, Ohio location in January 2015. Three years later, in January 2018, Mr. Ellerbee was promoted to Service Manager. According to Ellerbee, he had applied for a promotion earlier but was "held back" while other people were promoted before him. One white coworker, who was promoted to manager before Mr. Ellerbee, allegedly said that he "did not want to work with Ellerbee or work under him." (Ellerbee Dep. 65:5–14, 74:14–75:21, 253:2–24.)

### A. August 19 Incident

On August 19, 2019, Mr. Ellerbee allegedly refused a 17-year-old female coworker, C.R.'s, request to use the restroom. (C.R. Dep. 54:11–55:17.) When C.R. tried to walk past him to the restroom anyways, Ellerbee stuck out his hand to block her path. (Ellerbee Dep. 129:6–22.) Mr. Ellerbee avers that he did not want C.R. to use the restroom because customers were waiting for service. (*Id.* at 121:2–5.) C.R. alleges that Ellerbee's hand touched her upper thigh and C.R. pushed Ellerbee's hand away. (C.R. Dep. 56:01–16). Mr. Ellerbee, however, alleges that he reached out his hand to block her path and their "hands connected" as C.R. was "swiping [his] hand down." (Ellerbee Dep. 121–122.) C.R. reported the incident to a manager on duty, Austin Dodrill, and Dodrill informed General Manager Bruce Bitzer. (C.R. Dep. 64:14–65:03; Dodrill Dep. 13:16–14:09.) Chipotle's surveillance cameras recorded the incident. (*Id.* at 118:22–119:09, video available at Def.'s Mot. 3.)

The next day, on August 20, General Manager Bitzer showed the surveillance video to the Chipotle Field Leader who oversees the St. Clairsville location. (Bitzer Dep. 11:13–12:02.) The

2

Field Leader notified Chipotle's People Experience Analyst and directed General Manager Bitzer to collect statements from witnesses. (Caniff Dep. 38:2–11, 31:09–19, 37:10–13.)

Mr. Ellerbee left for a previously scheduled vacation the day after the August 19 incident. While on vacation, Mr. Ellerbee texted C.R. to ask when she was working. As a service manager, he was not in charge of scheduling employees to work. (Ellerbee Dep. 114:20–22, 133:06–134:05.)

### B. Ellerbee's Termination

Based on the August 19 incident and Mr. Ellerbee's subsequent text messages to C.R., the Field Leader made the decision to terminate Ellerbee. (Caniff Dep. 39:08–18.) General Manager Bitzer fired Mr. Ellerbee over the phone on August 28, 2019. (Ellerbee Dep. 187:24–188:10.) During the call, Bitzer allegedly stated that Ellerbee was fired for inappropriately touching C.R. (*Id.*) That same day, Mr. Ellerbee filed a wrongful termination complaint with Chipotle's Respectful Workplace hotline. (*Id.* at 154:9–157:02; Exh. 17.)

Chipotle learned after Ellerbee's termination that there were multiple alleged incidents between Mr. Ellerbee and C.R. On separate occasions, C.R. alleges that Ellerbee bit her back, grabbed her arm and bruised it, and held C.R.'s hand and ankle to pin her on the floor. (C.R. Dep. 21:7–21:16.) Chipotle employees also reported that Mr. Ellerbee had been drunk at work several times. Ellerbee admitted that he and other managers had celebratory drinks two or three times, and that he asked coworkers to buy him alcohol to give to someone else. (Ellerbee Dep. 235:9–236:10, 240:15–241:19.) Once, General Manager Bitzer "approached [Ellerbee]…about bottles being found behind the building and asked [Ellerbee] if [he] knew anything about it." (*Id.* at 238:07–10.) Mr. Ellerbee avers that he was questioned but other employees were not. (*Id.*)

After investigating, staff at the Chipotle's People Experience center upheld Mr. Ellerbee's termination. (Flores Dep. 14:02–17.) A Field Leader for Chipotle testified that Mr. Ellerbee was not replaced; other employees assumed his job responsibilities. (Defendant's Reply to Plaintiff's

3

Response, Exh. A ¶ 7, hereinafter "Def.'s Reply.") Mr. Ellerbee alleges that other employees who were accused of sexual harassment were transferred rather than terminated. (Pl.'s Resp. 24, Exh. N 4–5.)

### C. Alleged Defamation

Mr. Ellerbee avers that after his termination Chipotle employees told people in the community that he was fired for sexual harassment at least four times. First, Mr. Ellerbee alleges that he heard from a former coworker that Seth Chapman, a Chipotle manager, told the coworker that Ellerbee was fired "for sexually—for touching a minor." (Ellerbee Dep. 184:11–185:4.) Second, Mr. Ellerbee avers that he "think[s] Seth [Chapman] was telling different people about his termination" and that "Chapman told Seneca [Moore]" about the incident and Ms. Moore "told Brandy [Murphy] that she found out from the general manager at Chipotle." Ms. Murphy works in McDonalds management and told Ellerbee that she knew about his termination when he came to McDonalds to pick up food for Doordash. (*Id.* at 181:24–189:12.) Third, C.R. allegedly stated that her parents, managers, and "everybody in my store knows what happened to me." (C.R. Dep. 14:5–11.) Fourth, the General Manager of the St. Clairsville Chipotle "spoke with [his] managers" about what happened to Mr. Ellerbee. (Bitzer Dep. 50:19–51:2.)

Plaintiff Ellerbee brings this suit alleging race discrimination under Ohio Revised Code § 4112.99 and defamation. The parties have each moved for summary judgment on claims in the Complaint (ECF No. 1), which are ripe for decision.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has

4

the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("The requirement that a dispute be 'genuine' means that there must be more than some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's race discrimination and defamation claims. Plaintiff moves for partial summary judgment on Chipotle's use of after-acquired evidence in its defense of Chipotle's firing Plaintiff.

#### A. <u>Race Discrimination</u>

Under the Ohio Revised Code § 4112.02, an employer may not "discharge without cause" an employee because of his "race, color, religion, sex…" An employee may prove race discrimination based on direct or circumstantial evidence. *Johnson v. Kroger Co.*, 319 F.3d 858,

5

864 (6th Cir. 2003). Race discrimination claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451 (6th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). First, a plaintiff must demonstrate a prima facie case of discrimination by showing: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). If the plaintiff makes such a showing, the burden shifts to the defendant, who must "offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Id.* A successful articulation on the part of the defendant then shifts the burden back to the plaintiff to prove that the defendant's proffered reason was "merely a pretext for discrimination." *Id.* at 391–92.

Courts apply federal case law to employment discrimination claims under the Ohio Revised Code § 4112. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (analyzing state and federal employment discrimination claims under federal case law because Ohio's §4112 requirements are the same as Title VII).

1. **Prima Facie Case**

Defendant only challenges Mr. Ellerbee's ability to establish the fourth element of his prima facie case. That is, he has failed to raise any genuine issue of material fact as to whether he was "replaced by a person outside his protected class or was treated differently than a similarly situated individual outside his protected class." (Def.'s Mot. 11.) Establishing a prima facie case

is not an "onerous" burden. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

    a. *Replaced by Someone Outside Protected Class*

Mr. Ellerbee was not replaced; several white employees assumed his responsibilities. (Caniff Decl. ¶ 7.) "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) (age discrimination case). *Accord Novotny v. Elsevier*, 291 F. App'x 698, 702 (6th Cir. 2008) (gender discrimination case).

    b. *Treated Differently Than Similarly Situated Employees*

As the Sixth Circuit held in *Mitchell v. Toledo Hospital*, the employees to whom the plaintiff seeks to compare himself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." 964 F.2d at 583. To be considered "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583.

As further explained in *Ercegovich v. Goodyear Tire and Rubber Company*, the plaintiff is required to "demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." 154 F.3d at 352 (emphasis in original). "Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different

7

circumstances but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id*.

Finally, in the disciplinary context, a plaintiff "is not required to show that his proposed comparator's actions were identical to his own." *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010). Instead, the plaintiff and his proposed comparator must have engaged in acts of comparable seriousness. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir. 2002) ("The employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination.").

Plaintiff offers several individuals treated differently than himself, but none are proper comparators. First, Plaintiff argues that C.R., a white female, is a comparator because he and C.R. both filed complaints with human resources. (Pl.'s Resp. 24.) He claims that her sexual harassment claim was designated as more "critical" than his wrongful termination claim and therefore he was treated differently. (Pl.'s Mot. 24; Flores Dep. 63:18–23.) The categorization of a claim by an employer occurs after the fact and does not implicate similar employee conduct, which is the gravamen of the comparison.

Second, Plaintiff names as comparators two white employees accused of sexual harassment at different Chipotle locations overseen by the same Field Leader as Plaintiff. (Pl.'s Resp. 24, Exh. N at 4–5.) Both were accused of making inappropriate comments towards female coworkers. (*Id.*) Both employees were transferred instead of terminated. (*Id.*) These employees are not proper comparators because inappropriate comments are not of "comparable seriousness" as Mr. Ellerbee's alleged physical touching of a minor female employee. *See Clayton*, 281 F.3d at 612. Similar to the finding in *Clayton*, "[t]he undisputed facts in this case demonstrate that [Ellerbee]'s infraction was qualitatively more serious than those of his coworkers. The employer's more severe

8

treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination." *Id*.

Third and finally, Plaintiff argues that Manager Dodrill, a white male, is a comparator because General Manager Bitzer asked Plaintiff once whether he knew anything about alcohol bottles found behind the building but did not ask Manager Dodrill. (Ellerbee. Dep. 238:07–10; Pl.'s Resp. 23.) Bitzer did not treat Plaintiff differently or less favorably by asking one manager rather than another if he knows anything about alcohol bottles found on the premises of the restaurant. Bitzer's questioning did not accuse Plaintiff of drinking. Further, Manager Dodrill is not a proper comparator to Plaintiff's termination because Plaintiff was not disciplined in any way for the alcohol bottles found behind the building and the alcohol bottles did not impact his termination.

Based on the foregoing, Plaintiff fails to establish a prima facie case because he has not shown that he was treated differently than similarly situated employees outside his protected class. Moreover, even if Plaintiff established a prima facie case, his race discrimination claim fails at summary judgment because he cannot show pretext.

**2. Legitimate Reason for Termination and Pretext**

Defendant's explanation that Plaintiff was terminated for sexual harassment in violation of company policy is a legitimate, nondiscriminatory reason for termination. *See Giles v. Norman Noble, Inc.*, 88 F. App'x 890, 895 (6th Cir. 2004) (finding employer's proffered reason for employee's termination, that employee violated the company's sexual harassment policy, was a legitimate and nondiscriminatory). Therefore, Plaintiff has the burden at trial to prove by a

9

preponderance of the evidence that Defendant's reason is pretext for race discrimination. *See Nelson v. Ball Corp.*, 656 F. App'x 131, 134 (6th Cir. 2016).

A plaintiff can demonstrate pretext by showing that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Defendant argues that Plaintiff fails to show that the proffered reason for termination—sexual harassment—was pretext for race discrimination because there is no evidence of race discrimination. (Def.'s Mot. 10.) Plaintiff makes several arguments he believes point to Defendant's racial bias.

a. *Racial Statistics*

Mr. Ellerbee argues that the racial makeup of Chipotle's St. Clairsville location shows Chipotle's racial bias:

> Over the 2-year period from 8/1/17 to 8/31/19, eleven managerial employees were employed at this store; all but one were identified as white…No managerial employees were fired in the six months preceding the alleged inappropriate touching…making Ellerbee's firing anomalous. Conversely, Defendant Chipotle Services…identified 18 Service Managers…who were terminated from 8/1/17 to 8/31/19. Four were Black…supplying the inference that race was a factor in the firings.

(Pl.'s Mot. 19–21.) No reasonable juror could find from these alleged statistics that Mr. Ellerbee was terminated because of his race. *See Martin v. U.S. Playing Card Co.*, 172 F.3d 48 (6th Cir. 1998) ("raw numerical data" from small sample sizes are "rarely a sufficient basis" for pretext). The fact that only one manager at the St. Clairsville location in the past two years was not white does not establish that Chipotle fired Mr. Ellerbee because of his race. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (finding the percentage of employer's minority supervisors irrelevant to whether employee was terminated because of his race). Plaintiff's argument that his

termination was "anomalous" because no managers were fired in the six months preceding is unrelated to race. Further, the fact that four out of eighteen managers who were fired in the past two years were Black does not suggest that Black managers are fired more often than white managers. Thus, the alleged statistics, when viewed in a light most favorable to Plaintiff, do not create a genuine issue of material fact as to whether Chipotle fired him because of his race.

b. *Employee's Statement*

Plaintiff argues another employee's statement that he "did not want to work with Ellerbee or work under him" is further evidence of Chipotle's racial bias. (Ellerbee Dep. 253:9–22; Pl.'s Mot. 22.) This argument also fails to raise any genuine issue of material fact because the employee does not mention race in this statement and Plaintiff does not present context from which a reasonable inference can be made that the statement concerned race.

c. *Manager's Question About Alcohol Bottles Behind Building*

Plaintiff claims that Chipotle is racially biased because one time the General Manager "approached [Ellerbee] when [he] got back to work about bottles being found behind the building and asked [Ellerbee] if [he] knew anything about it" but Ellerbee "told him no." (Ellerbee. Dep. 238:07-10.) Mr. Ellerbee avers that here, he was questioned but white employees who were more likely responsible were not questioned. (*Id*.) Even when viewed in a light most favorable to Plaintiff, Chipotle's questioning a manager about alcohol bottles found on the premises does not create an issue of material fact as to whether Mr. Ellerbee was terminated in a separate incident because of his race.

d. *Inadequate Investigation of August 19 Incident*

Plaintiff argues that Chipotle's investigation of the August 19 incident was "superficial" and "suspicious" and that Chipotle's employees exaggerated the event. (Pl.'s Resp. 11–19.) But so long as Chipotle honestly believed its proffered reason for termination, Plaintiff cannot show

11

pretext, even if the August 19 facts are later shown to be incorrect. *See Segel v. Kimberly-Clark Corp.*, 473 F. App'x 416, 421 (6th Cir. 2012); *see also Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 886 (6th Cir. 2020) ("employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). "[T]o rebut an employer's invocation of the [honest belief] rule, the plaintiff must offer some evidence of 'an error on the part of the employer that is too obvious to be unintentional.'" *Hale v. Mercy Health Partners*, 617 F. App'x 395, 399–400 (6th Cir. 2015). "[T]he employer's decision-making process need not be optimal or leave no stone unturned; '[r]ather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Murphy v. Ohio State Univ.*, 549 F. App'x 315, 322 (6th Cir. 2013) (citation omitted).

Mr. Ellerbee argues that Chipotle's investigation was suspicious because Chipotle interviewed other employees but did not interview him. (Pl.'s Resp. at 16.) But in the context presented here, the fact that Chipotle did not talk to Plaintiff before deciding to terminate him does not diminish Chipotle's honest belief that Plaintiff had violated Chipotle's sexual harassment policy. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012) ("[A]n 'optimal' investigation—i.e., interviewing the employee and some or all of his witnesses—is not a prerequisite to application of the honest belief rule.") There is no evidence that Chipotle did not follow its usual investigation protocol. Chipotle's investigation based on the surveillance video and witness interviews determined that an inappropriate touching did occur and Plaintiff was

12

terminated on that basis. (Caniff Dep. at 30:19-31:16; Pl. Dep. at 171:23-172:03; Exhibit 18, C.R.'s Sexual Harassment Complaint.)

e. *HR Concluded "No Sexual Harassment"*

Finally, Plaintiff argues that Chipotle's proffered reason is pretext because the human resources investigator did not conclude that the August 19 incident was sexual harassment. (Pl.'s Resp. 26–27.) The investigator's testimony says, however, "I did not draw a conclusion of sexual harassment" because "that's a legal opinion" but "there was a violation of our policies with respect to workplace policy." (Flores Dep. 33:16–19, 47:19–21, 39:21–40:02.) Because there "was improper touching," Plaintiff "violated a policy, and therefore, [the investigator] maintained the termination." (Flores Dep. at 48:21-23.) When viewing the record in the light most favorable to Mr. Ellerbee, there is no genuine issue that Chipotle's reason for termination—inappropriately touching a minor coworker—was pretext for race discrimination.

Consequently, Chipotle is entitled to judgment as a matter of law on Mr. Ellerbee's race discrimination claim because when viewing the facts in the light most favorable to Ellerbee and drawing all reasonable inferences in his favor, there is no genuine issue of material fact as to whether he was fired because of his race.

**B. Defamation**

Defamation is a "false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business." *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 108, 726 N.E.2d 1084, 1088 (Ohio Ct. App. 1999). To prove defamation, a plaintiff must show: "(1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault or at least negligence on the part of the defendant; (5) that was either defamatory per se or caused special harm to the plaintiff." *MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F.

13

Supp. 2d 665, 673 (S.D. Ohio 2012); *see also Pollock v. Rashid*, 117 Ohio App. 3d 361, 690 N.E.2d 903 (Ohio Ct. App. 1996). "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Hunt v. Monro Muffler Brake, Inc.*, 769 F. App'x 253, 259 (6th Cir. 2019) (citations omitted). "A court cannot rely on unsworn inadmissible hearsay when ruling on a motion for summary judgment." *Rhoades v. Standard Parking Corp.*, 559 F. App'x 500, 506 (6th Cir. 2014).

Chipotle argues that it is entitled to summary judgment on Mr. Ellerbee's defamation claim because the only evidence of the statement is inadmissible hearsay, the alleged statements were true, and there was no unprivileged communication to a third party. (Def.'s Mot. 16–20.) Mr. Ellerbee alleges four instances where Chipotle employees made defamatory statements about Plaintiff.

First, Plaintiff claims that he "think[s] Seth [Chapman]," a Chipotle manager, was "telling different people about his termination" and that "Chapman told Seneca [Moore]" who "told Brandy that she found out from the general manager at Chipotle." Brandy Murphy works in McDonalds management and told Plaintiff this when he was working for Doordash and came to McDonalds to pick up food. (Ellerbee Dep. 181:24–189:12.) Even if this broad statement were defamatory, it is multiple layers of inadmissible hearsay because Murphy's out of court statement to Plaintiff is offered to show the truth of the matter—that Chapman told Moore that Mr. Ellerbee was terminated. Fed. R. Evid. 801(c); *see Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 313 (6th Cir. 2012) (affirming summary judgment for defendant on defamation claim because the out of court third-party statement constituted inadmissible hearsay since it was offered to prove the truth of the matter asserted; that the defendant defamed the plaintiff).

Second, Plaintiff offers C.R.'s deposition testimony that her parents, managers, and "everybody in my store knows what happened to me." (C.R. Dep. 14:5–11.) This statement speaks

14

about C.R., not Plaintiff and therefore it does not meet the second element of a defamation claim—that the statement is "about the Plaintiff." *See MedChoice Fin., LLC*, 857 F. Supp. 2d 665, 673 (S.D. Ohio 2012).

Third, General Manager Bitzer, who oversees the St. Clairsville Chipotle, "spoke with [his] managers" about what happened to Mr. Ellerbee. (Bitzer Dep. 50:19–51:2; Pl.'s Resp. 32.) Plaintiff claims that telling other managers "about what happened" to him is defamatory. General Managers and other managers within Chipotle have a qualified privilege to share information about Mr. Ellerbee's termination because they share a common interest of supervising Chipotle employees. *See Novotny v. Reed Elsevier*, No. C-3-05-424, 2007 WL 2688171, at *28 (S.D. Ohio Sept. 10, 2007) ("A qualified privilege exists where the publisher and the recipient have a common interest and the communication is a kind of communication reasonably calculated to protect or further the common interest.").

Fourth, Plaintiff similarly claims that Seth Chapman, a Chipotle manager, told a former coworker that Plaintiff was fired for "touching a minor." (Ellerbee Dep. 184:11–185:4.) This statement is protected because managers have a qualified privilege to tell workers why a coworker is fired. The manager and workers share common interests of staffing the workplace and ensuring adherence to Chipotle policies. Communicating to workers the reason why an employee is fired is reasonably calculated to further the interests of staffing and adhering to company policy.

In sum, Plaintiff does not offer unprivileged, admissible evidence that Chipotle made unlawful defamatory statements about him. Chipotle is entitled to judgment as a matter of law on its defamation claim.

### C. Plaintiff's Motion for Partial Summary Judgment

Mr. Ellerbee moves for partial summary judgment claiming that Chipotle has not met the elements to use evidence acquired after the firing as motivation for terminating Ellerbee. (ECF No.

38.) Mr. Ellerbee also filed an amended motion for partial summary judgment. (ECF No. 42.) Because the Court finds Defendant is entitled to judgment as a matter of law on all Plaintiff's claims, the Court declines to address Plaintiff's cross motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Chipotle's Motion for Summary Judgment (ECF No. 39) and **DENIES AS MOOT** Plaintiff's Amended Motion for Partial Summary Judgment (ECF No. 42) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 38). The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**10/18/2021**                                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                                              **EDMUND A. SARGUS, JR.**
                                                                              **UNITED STATES DISTRICT JUDGE**